# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| Bedrock Computer Technologies LLC, <br><br> Plaintiff, <br><br> v. <br><br> Softlayer Technologies, Inc., <br> CitiWare Technology Solutions, LLC, <br> Google Inc., <br> Yahoo! Inc., <br> MySpace Inc., <br> Amazon.com Inc., <br> PayPal Inc., <br> Match.com Inc., <br> AOL LLC, and <br> CME Group Inc., <br><br> Defendants. | Case No. 6:09-CV-269-LED <br><br> JURY TRIAL DEMANDED |

## JOINT MOTION FOR ENTRY OF DOCKET CONTROL AND DISCOVERY ORDERS

Pursuant to the Court's September 14, 2009 Order (Dkt. No. 78), the parties have negotiated in an attempt to reach consensus on the terms of an agreed Docket Control Order and Discovery Order. Although agreement has been reached on a majority of the issues, there remain some disagreements between the parties on the appropriate terms of the proposed Docket Control order and Discovery Order.

### I.   DOCKET CONTROL ORDER

Exhibit A to this Joint Report is the proposed Docket Control Order of Plaintiff Bedrock Computer Technologies LLC ("Bedrock"), and Exhibit B is the proposed Docket Control Order of Defendants SoftLayer Technologies, Inc., Google Inc., Yahoo! Inc., MySpace Inc.,

1

Amazon.com Inc., PayPal Inc., Match.com Inc., AOL LLC, and CME Group Inc.[1] (collectively, "Defendants"). There are two disagreements between the parties. The first disagreement is that Bedrock proposes reply expert reports on all issues, or no reply expert reports at all, where Defendants propose reply expert reports only where the party submitting rebuttal expert reports has the burden. The second issue is that Bedrock proposes January 8, 2010 for the date for compliance with P.R. 3-3 and 3-4, where Defendants propose February 28, 2010.

### A. Bedrock's Position Regarding Reply Expert Reports

Bedrock seeks straightforward application of the Goose/Gander Rule: either both parties or neither party should have the opportunity to submit reply expert reports.

The Defendants on the other hand seek an extraordinary exception. They request a reply expert report for the sole topic of secondary considerations of non-obviousness on the ground that their invalidity expert must submit his or her report first. This request is unwarranted for three reasons. First, the Defendants bear the burden to show obviousness—this burden of persuasion never shifts to the patentee. *See, e.g.*, *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007). Second, the Defendants will have ample opportunity to take fact discovery on the topic before submitting their initial expert report on secondary considerations of non-obviousness. Third, the Defendants unreasonably limit their reasoning just to the topic of secondary considerations; the same reasoning could be extended to the topics of alleged commercially acceptable alternatives, alleged hypothetical design-arounds, alleged substantial non-infringing uses, as well as any other "surprise" argument of non-infringement or damages that an expert might advance in his or her rebuttal expert report. The Defendants have not shown why secondary considerations of non-obviousness should be singled out for a special reply expert report.

---

[1] Defendant CitiWare Technology Solutions, LLC has not made an appearance in this case.

### B. Defendants' Position Regarding Reply Expert Reports

Defendants propose that reply expert reports be built into the schedule but be limited "to issues raised for the first time in rebuttal expert reports as to which the party submitting the rebuttal expert report has the burden." The party with the burden is required to set forth its position regarding the relevant issues in an opening expert report. The party without the burden of proof may then respond to that position in a rebuttal expert report. This two-step approach is not sufficient on issues where the party without the burden will be the initial proponent of the evidence. One example of this is secondary indicia of non-obviousness. In the case of invalidity, Defendants will have the burden of proof and will be required to set forth their entire case in their opening expert report. Bedrock, however, will be the initial proponent of proof regarding secondary indicia of nonobviousness, but will not set forth its position on these issues until the rebuttal to Defendants' opening invalidity report. *See, e.g., Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007). There may be other issues, such as non-infringing alternatives, that may be raised for the first time by Defendants even though Bedrock bears the burden on infringement. In such situations, a party should be entitled to a reply on such issues alone. As rebuttal expert reports are not supposed to raise new issues that were not raised in the opening expert reports, there should be no need to submit a reply on any other issues. After rebuttal expert reports are submitted, if there is any other reason why any party believes a reply expert report is warranted at that time, that issue can be addressed then. But providing in advance for reply reports across the board (Bedrock's fallback position) may discourage comprehensive treatment of issues that should be raised in opening reports. Conversely, not providing in advance for reply reports on issues that will be raised for the first time in rebuttal reports will prejudice any parties who will not be able to respond to a submission that implicates an issue on which they bear the ultimate burden.

### C. Bedrock's Position Regarding the Date for P.R. 3-3 and 3-4 Disclosures

Bedrock seeks to adhere to the Court's proposed schedule as much as possible. This deadline under the Court's September 14th, 2009 Order (Dkt. No. 78) is currently December 30th, 2009. Bedrock's position of January 8th, 2010 moves this deadline out of the holiday season. January 8th, 2010 is 42 days beyond what would have been the deadline under the Patent Rules. *See* P. R. 3-3 (Invalidity contentions are due 45 days after service of infringement contentions) *and* Dkt. No. 78 (Setting an October 9th, 2009 deadline for Bedrock's infringement contentions, for which Bedrock did not seek or require an extension). In other words, Bedrock's proposed deadline gives the Defendants almost double the amount of time that they would have normally received under the Patent Rules. In contrast, the Defendants' proposed extension of an additional 60 days to comply with P. R. 3-3 and 3-4 runs afoul of the Patent Rules' purpose of ensuring the speedy and fair exchange of disclosures.

The Defendants attempt to justify their position by claiming that Bedrock's Complaint and infringement contentions are deficient. Bedrock maintains the sufficiency of its Complaint (Dkt. Nos. 84 and 98), and Bedrock's infringement contentions, which cite specific routines and data structures, are far from deficient (*see, e.g.,* Dkt. No. 98-3 (Bedrock's PICs for Defendant Yahoo! Inc.)) Finally, every other justification that the Defendants advance fails to take into account that P.R. 3-6 provides a mechanism for supplementing invalidity contentions. Bedrock also notes that it offered to the Defendants, as a compromise, a deadline of January 31st, 2010 if they agreed not to use that extra time for motions practice. That offer was rejected.

### D. Defendants' Position Regarding the Date for P.R. 3-3 and 3-4 Disclosures

The trial date for this case is nearly two years out. Likewise, the Markman hearing is 18 months away. Therefore, Bedrock cannot possibly demonstrate that it would be prejudiced by an additional 60 days for Defendants to serve their P.R. 3-3 and 3-4 contentions, and it makes no

attempt to do so.[2] Defendants have been seriously prejudiced by Bedrock's failure to identify a single accused product in its Complaint, and its recent service of plainly insufficient infringement contentions.[3] Although Defendants are attempting to avoid motion practice through the meet and confer process, it appears from Bedrock's response that motion practice may indeed be necessary for Defendants to obtain the adequate disclosures that they are entitled to under the Eastern District's patent rules.

Bedrock has agreed to only a 10 day extension. Bedrock's attempt to portray this as a 42-day extension ignores this Court's standard docket control order, which makes the Rule 3-3 and 3-4 disclosures due 55 days after the docket control and discovery orders are filed. As explained below, making these disclosures due on January 8 would be unreasonable, and highly prejudicial to all Defendants.

First, a 60 day extension is not unusual in this Court, and represents only about 4 ½ months after service of the infringement contentions (a period that includes the holiday season and three trials for Google, Match, and Softlayer's counsel as discussed below). This timeframe is not materially different from that specified in other docket control orders allowing four months or more between infringement contentions and invalidity contentions. (*See, e.g., Acquis LLC v. Appro Int'l, Inc.* (Case No. 6:09-00148-LED) (17 weeks between infringement and invalidity contentions); *Variant, Inc. v. Adams Golf, Inc* (Case No. 6:08-00478-LED) (18 weeks); *Acceleron, LLC v. Egenera, Inc.* (Case No. 6:08-00417- LED) (17 weeks)). A 60 day extension

---

[2] This extension benefits Plaintiff as well, as the additional disclosures required by the discovery order are due on the same day the 3-3 and 3-4 disclosures are due.

[3] Bedrock attempts to portray its infringement contentions as adequate. However, by its own admission, it has not provided what even it regards as sufficient specificity as to each of the 350+ versions of open source software it has accused. This failure leaves Defendants in the untenable position of having to sift through every version to hazard a guess as to what Bedrock may be accusing. Furthermore, Bedrock has hidden behind the assertion that it needs Defendants' source code as its excuse for not making full disclosures, when in fact Bedrock is accusing freely available versions of open source software.

5

is also warranted because there are a large number of defendants that need additional time to coordinate with one another in preparing the invalidity contentions.

Second, as Defendants told Bedrock during the meet and confer process, counsel for Google and Match.com have two trials throughout January, and counsel for Softlayer has one trial in January, which they will be preparing for in December. The first trial for Google's and Match's counsel is scheduled to begin on January 4, 2010 in the United States for the District of Utah and is scheduled to last 30 court days.[4] Softlayer's counsel's trial is scheduled to begin on January 4, 2010 in the Northern District of Texas.[5] The second trial for Google's and Match's counsel is scheduled to begin on January 11, 2010 in the United States District Court for the Northern District of California.[6] Under Bedrock's proposal, 1) Google, Match, and Softlayer will be prejudiced because their counsel will unnecessarily be forced to spend additional time on the invalidity contentions as they are preparing for and conducting unrelated trials; and 2) the other Defendants will be prejudiced because they would otherwise have assistance by counsel for Google, Match, and Softlayer in preparing the invalidity contentions. Under Defendants' proposal, Defendants will have a month after unrelated trials for Google's, Match's, and Softlayer's counsel to conclude to prepare and finalize the invalidity contentions.

Third, Bedrock's proposal ignores the holiday season. Just as Defendants expect Bedrock intends to spend the holidays, the Defendants and their counsel hope to spend this season with their families, and some may be celebrating into the first week of the new year. The holiday season will end for most of us on Sunday, January 3, and five days is not enough time for Defendants and their counsel to finalize and serve their invalidity contentions. Bedrock's

---

[4] *Philip M. Adams & Associates, L.L.C. v. Sony Electronics Inc., et al.* (Case No. 1:05-CV-64-TS) (D. Utah).
[5] *Joovy LLC et. al. v. BabyTrend Inc. et al.* (Case No. 3:06-CV-00616-F) (N.D. Tex.).
[6] *Autodesk, Inc. v. Dassault Systems SolidWorks Corp.* (Case No. 3:08-CV-04397-WHA (N.D. Cal.).

proposal prejudices all Defendants and their counsel because they would have to unnecessarily forego celebrating the holidays with their families.

Finally, there is plenty of time in the schedule to move the due date for Defendants' invalidity contentions to February 28, 2010. After Defendants serve their invalidity contentions, the parties must exchange proposed terms and claim elements for construction. The due date for that exchange is May 18, 2010. Thus, Bedrock would have nearly three months to review Defendants' invalidity contentions before it had to exchange proposed terms for construction from the eight asserted claims of the patent-in-suit.

Bedrock notes that Defendants declined its offer of a "compromise" due date of January 31. However, the terms of that offer were not reasonable. Bedrock's offer was conditioned on Defendants' agreement not to file a motion for an order requiring Bedrock to supplement its deficient infringement contentions.[7] Thus, Bedrock was effectively demanding that Defendants give up their right to know what Bedrock is accusing in this case. Furthermore, Bedrock's offer of January 31 still ignored the fact that counsel for Google, Match, and Softlayer will be in trial during January.

## II.  DISCOVERY ORDER

Exhibit C to this Joint Report is Bedrock's proposed discovery order, and Exhibit D is Defendants' proposed discovery order. There are three disagreements between the parties relating to limits on fact depositions of parties, limits on depositions of experts, and electronic discovery and production.

### A.  Bedrock's Position Regarding Limits on Fact Depositions of Parties

Plaintiff proposes the following language:

---

[7] At the time the offer was made, Bedrock had not indicated whether or not it would provide the supplements as required by the rules without motion practice. Bedrock has since indicated that it will not do so.

7

> Plaintiff shall be entitled to take up to seventy-five (75) hours of deposition testimony of each Defendant (including 30(b)(6) depositions and depositions of their employees and officers). Defendants shall be entitled to take up to seventy-five (75) hours of joint deposition testimony of Plaintiff (including 30(b)(6) depositions and depositions of employees and officers).

Bedrock position is calculated on its best estimate of time that it will need to prove up infringement and damages for each defendant in this case. More specifically, Bedrock believes that it will need 35 to 40 hours of 30(b)(1) deposition and 35 to 40 hours of 30(b)(6) deposition with each defendant.

### B. Defendants' Position Regarding Limits on Fact Depositions of Parties

Defendants' propose the following language:

> Plaintiff shall be entitled to take 250 hours of deposition testimony of the Defendants (including 30(b)(6) depositions and depositions of employees and officers). Plaintiff cannot take more than twenty-eight (28) hours of deposition testimony of a single Defendant. Excluding depositions of inventors and prosecuting attorneys, each Defendant may take up to twenty-five (25) hours of deposition testimony of Plaintiff (including 30(b)(6) depositions and depositions of employees and officers).

Bedrock's proposal ignores the fact that Bedrock is advancing a single infringement theory, common to every defendant in this case, based on the use of Linux – an open source software operating system that is developed by a worldwide community of software developers, not Defendants. The infringement contentions against each defendant are nearly identical in all respects. Moreover, the infringement contentions appear to focus only on one portion of Linux – the "route.c" code that relates to networking functionality. Thus, Bedrock has not been able to assert any credible reason why it needs over 10 days of deposition time per Defendant. Defendants' proposal takes into consideration the nature of the case, where Bedrock has accused only open source Linux software that was developed by non-parties, yet still provides four days of deposition time. This is more than adequate for Bedrock to take depositions of each party on

the issues of 1) damages, 2) technology (to the extent Defendants are in possession of any relevant information), including what versions of Linux are used by each defendant, and 3) document collection ( a subject Bedrock indicated it may want to explore). Any other topics would implicate the parties' opposing contentions, which are more appropriate for expert discovery.

Furthermore, Bedrock's proposal is one-sided in the extreme. Under Bedrock's proposal, it may take up to 675 total deposition hours of Defendants,[8] whereas each defendant can depose Bedrock for only 8.3 hours. This is prejudicial to Defendants, especially if it becomes the case that a single defendant is interested in a deposition that the others are not interested in – for example, if there are issues of accusation that affect only one defendant. In contrast, Defendants' proposal is fair, with each defendant having slightly less time to depose Bedrock than Bedrock may have deposing each defendant.

### C. Bedrock's Position on Limits on Depositions of Experts

Plaintiff's propose the following language:

> However, the deposition of any of the plaintiff's or defendants' expert who is designated to testify with respect to or on behalf of multiple defendants shall be limited to four hours with an additional two hours for each individual defendant as to which the expert offers testimony, not to exceed 14 hours (such that, for example, if an expert issues a report addressing the alleged infringement of [first defendant] and [second defendant], that witness would be subject to a maximum 8 hours of deposition [4+2+2].

Bedrock's position is simply that there needs to be a reasonable cap on the deposition time of the expert witnesses in this case. Two full days of expert deposition time is reasonable.

### D. Defendants' Position on Limits on Depositions of Experts

Defendants' propose the following language:

---

[8] Defendants' have not included CitiWare in this calculation, as it has not made an appearance in the case.

> However, the deposition of any of the plaintiff's or defendants' experts on issues other than damages who are designated to testify with respect to multiple defendants shall be limited to six hours with an additional four hours for each individual defendant as to which the expert offers testimony, not to exceed 28 hours (such that, for example, if an expert issues a report addressing the alleged infringement of [first defendant] and [second defendant], that witness would be subject to 14 hours of deposition [6+4+4]. For damages experts, each party will be entitled to depose the expert up to 7 hours.

Defendants' agreed to a reasonable cap on the deposition time of expert witnesses in this case. However, only two days of expert deposition time is unreasonable given that there are 9-10 Defendants in the case. Defendants presume that the two areas where a potential limit on deposition time will arise are 1) infringement issues, and 2) damages issues.

Regarding infringement issues, Defendants recognize that Bedrock has accused the same "route.c" portion of open source Linux software for all Defendants. However, this, like many patent cases, will likely be a "battle of the experts," making expert discovery extremely important. Although Bedrock accuses open source software, each defendant is separately situated. Defendants may use different versions of the Linux operating system software and different features within each version (Plaintiff has accused 350+ versions of Linux). Each version of Linux may have different versions of accused code (which Plaintiff has not yet adequately disclosed). Furthermore, Defendants use different Linux distributions, and therefore have different sources of the accused products. Under Bedrock's proposal, the nine Defendants would each have only 1.6 hours of deposition time to examine the expert.[9] That is plainly not adequate for a thorough examination of an expert's opinion on a critical issue. In fact, in a typical case, a defendant would be entitled to 7 hours deposition time—over five hours more than what Bedrock has proposed. Defendants do not believe that there should be any limits on the amount of time the expert can be deposed, but in an effort to compromise, they have agreed

---

[9] As Bedrock has agreed that it will have only four experts, Defendants presume Bedrock will have only one infringement expert and one damages expert.

to limit the time they will depose an expert to 28 hours—which leaves each defendant less than half a day to depose the expert.

It is even more important that each defendant have the ability to fully depose Bedrock's damages expert. Damages reports are often long and complex, including pages and pages of analysis. Furthermore, even if Bedrock could argue that the nine Defendants are similarly situated with respect to the infringement allegations, that argument cannot apply to damages. Each defendant is situated quite differently with respect to damages. Defendants have no way of determining what Bedrock's damages theories will be. And, given that Bedrock accuses the open source Linux Kernel that Defendants do not make or sell, the damages issues may well be further complicated. Defendants' position, therefore, is that each defendant should have the opportunity to depose the damages expert for 7 full hours.

### E. Bedrock's Position on Electronic Discovery and Production

Plaintiff's position:

> The parties have agreed that no voicemails, instant messages, and cell phone text messages will be preserved, searched for, or produced under any circumstances.

Bedrock takes the conventional position that emails from individuals within a company help the jury decide the merits of the parties' competing positions by revealing the actual dialogue underlying a company's decisions and actions. In this way, electronic mail is highly probative evidence, particularly for issues related to damages. The Defendants' "ask and you shall receive" position is unworkable because document review is usually the beginning point of discovery and shapes subsequent discovery. Finally, the parties are very likely to dispute whether a showing of good cause has been made, and so the Defendants' proposed regime would unnecessarily burden the Court with additional discovery motions.

### D. Defendants' Position on Electronic Discovery and Production

Defendants' propose the following language:

    a.    The parties have agreed that no electronic mail or electronic mail documentation (e.g., attachments) will be searched for or produced unless good cause for the production can be shown, and further subject to the producing party's claim of undue burden or cost. The parties will meet and confer as to good cause on this issue. The parties agree, without limiting further instances of good cause, that good cause to search and produce electronic mail exists when electronic mail is reasonably likely to reveal the authorship, receipt, timing, meaning or context of specific key documents or events that the receiving party identifies as material to a fact or issue in dispute, and such information is not readily and economically available through other forms of discovery. The parties also have agreed that no voicemails, instant messages, and cell phone text messages will be preserved, searched for, or produced under any circumstances.

    b.    If a party believes that particular categories of electronic mail or electronic mail documentation of an adverse, producing party may include relevant and discoverable information not available by other means, a party may request that such material be searched for by the adverse, producing party. The requesting party and the producing party will negotiate in good faith regarding the requesting party's need for such production and the best manner of obtaining the particular information, whether by keyword searches or otherwise. If an agreement cannot be reached, either party may ask the Court for relief.

As the Court is aware, discovery is costly and time-consuming, and this is particularly true of electronic discovery. Under the Federal Rules, a party is not required to produce information when the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(iii). In this case, the burden and expense that would be entailed by requiring each defendant to search the massive numbers of emails their employees send daily far outweighs any potential benefit. First, Bedrock has not alleged notice or willfulness. Therefore, intent is not at issue here, and any statements that may have been made in emails relating to intent are not relevant. Second, Bedrock has accused only publicly available open source software that each defendant obtains from an outside source. There is no reason why any

defendant would have a single email that would be relevant to infringement. Finally, while Bedrock claims that there could be emails relevant to damages, no defendant markets or sells Linux. To the extent Bedrock seeks information in emails relating to sales figures or marketing for products or services other than Linux, such information is either 1) not relevant to the case, or 2) unreasonably cumulative or duplicative, and obtainable in a more convenient, less burdensome, and less expensive manner through the production of documents other than emails. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Defendants' proposed language is favorable to Bedrock as well, as it may not have to produce, or add to a privilege log, any emails related to, for example, pre-suit investigation, the patent, and acquisition of the patent. If there is an email that may be relevant, Defendants' proposal provides a way for that email to be discoverable. In all, Defendants' proposal will provide for more effective, more efficient, less burdensome, and less costly discovery in this case.

Dated: November 5, 2009

| Respectfully submitted, | **ALSTON & BIRD LLP** |
|---|---|
| **McKOOL SMITH, P.C.** | _/s/ Alan L. Whitehurst_ |
| | Frank G. Smith |
| /s/ *Sam F. Baxter w/ permission by Robert Christopher Bunt* | frank.smith@alston.com |
| | ALSTON & BIRD LLP |
| Sam F. Baxter, Lead Attorney | One Atlantic Center |
| Texas Bar No. 01938000 | 1201 West Peachtree Street |
| **McKOOL SMITH, P.C.** | Atlanta, GA 30309 |
| sbaxter@mckoolsmith.com | Telephone: (404) 881-7240 |
| 104 E. Houston Street, Suite 300 | Facsimile: (404) 256-8184 |
| P.O. Box 0 | |
| Marshall, Texas 75670 | Alan L. Whitehurst |
| Telephone: (903) 923-9000 | alan.whitehurst@alston.com |
| Facsimile: (903) 923-9099 | Marissa R. Ducca |
| | marissa.ducca@alston.com |
| Douglas A. Cawley | ALSTON & BIRD LLP |
| Texas Bar No. 04035500 | The Atlantic Building |

| | |
|---|---|
| dcawley@mckoolsmith.com<br>Theodore Stevenson, III<br>Texas Bar No. 19196650<br>tstevenson@mckoolsmith.com<br>J. Austin Curry<br>Texas Bar No. 24059636<br>acurry@mckoolsmith.com<br>**McKOOL SMITH, P.C.**<br>300 Crescent Court, Suite 1500<br>Dallas, Texas 75201<br>Telephone: 214-978-4000<br>Facsimile: 214-978-4044<br><br>Robert M. Parker<br>Texas Bar No. 15498000<br>Robert Christopher Bunt<br>Texas Bar No. 00787165<br>**PARKER, BUNT & AINSWORTH, P.C.**<br>100 E. Ferguson, Suite 1114<br>Tyler, Texas 75702<br>Telephone: 903-531-3535<br>Facsimile: 903-533-9687<br>E-mail: rmparker@pbatyler.com<br>E-mail: rcbunt@pbatyler.com<br>**ATTORNEYS FOR PLAINTIFF BEDROCK COMPUTER TECHNOLOGIES LLC** | 950 F Street, N.W.<br>Washington, DC 20004<br>Telephone: (202) 756-3300<br>Facsimile: (202) 756-3333<br><br>*Attorneys for Defendants MySpace Inc., Amazon.com Inc., AOL LLC, and CME Group Inc.*<br><br>**SONNENSCHEIN NATH & ROSENTHAL LLP**<br><br>/s/ *Yar R. Chaikovsky*<br>Yar R. Chaikovsky<br>California State Bar No. 175421<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>1530 Page Mill Road, Suite 200<br>Palo Alto, CA 94304<br>Telephone: (650) 798-0300<br>Facsimile: (650) 798-0310<br>ychaikovsky@sonnenschein.com<br><br>*Attorney for Defendant Yahoo! Inc.*<br><br>**STORM LLP**<br><br>/s/ *Paul V. Storm*<br>Paul V. Storm<br>State Bar No. 19325350<br>S. Scott Pershern<br>State Bar No. 24060412<br>STORMLLP<br>901 Main Street<br>Suite 7100<br>Dallas, Texas 75202<br>(214) 347-4700 (Telephone)<br>(214) 347-4799 (Facsimile)<br><br>*Attorneys for Defendant Softlayer Technologies, Inc.*<br><br>**POTTER MINTON**<br><br>/s/ *Michael E. Jones*<br>Michael E. Jones<br>State Bar No. 10929400 |

|  | Allen Gardner |
|---|---|
|  | State Bar No. 24043679 |
|  | POTTER MINTON |
|  | A PROFESSIONAL CORPORATION |
|  | 110 N. College, 500 Plaza Tower |
|  | P.O. Box 359 |
|  | Tyler, Texas 75710 |
|  | Tel: (903) 597-8311 |
|  | Fax: (903) 593-0846 |
|  | mikejones@potterminton.com |
|  | allengardner@potterminton.com |
|  |  |
|  | *Attorneys for Defendant PayPal, Inc., Google Inc., and Match.com, LLC.* |
|  | **QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP** |
|  |  |
|  | Claude M. Stern |
|  | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP |
|  | 555 Twin Dolphin Dr., Suite 560 |
|  | Redwood Shores, CA 94065 |
|  | Telephone: 650-801-5000 |
|  | Facsimile: 650-801-5100 |
|  | Email: claudestern@quinnemanuel.com |
|  |  |
|  | *Attorneys for Defendants Match.com, LLC and Google Inc.* |

# CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record, who are deemed to have consented to electronic service are being served this November 5, 2009, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt