**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL: (650) 801-5000 FAX: (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5020**

WRITER'S INTERNET ADDRESS
**toddbriggs@quinnemanuel.com**

October 30, 2009

<u>VIA EMAIL</u>

Doug Cawley
McKool Smith
300 Crescent Court, Suite 1500
Dallas, TX 75201

Re:   *Bedrock Computer Techs. v. Softlayer Tech., et al.,* C.A. 6:09-CV-269 (LED)

Dear Doug:

  I write regarding Bedrock's Patent Rule 3-1 disclosure of asserted claims and infringement contentions for Google and Match.com, which we have carefully studied over the past two weeks.

  As you know, Bedrock's complaint failed to make Google and Match.com aware of the products that are at issue in the litigation or how those unidentified products were in any way related to the patent-in-suit, as the complaint included only bare allegations of infringement. Google and Match.com were hopeful that Bedrock's infringement contentions would shed more light on Bedrock's infringement allegations, but unfortunately they failed to do so. Bedrock's infringement contentions claim that unidentified Google and Match.com "computer equipment" somehow infringes the patent-in-suit since that unidentified "computer equipment" uses publicly available Linux source code. These vague and conclusory contentions fall far short of the specificity required by the Local Patent Rules.

  Under the rules, Bedrock must identify the accused products with specificity and set forth its specific infringement theories in its contentions. *Connectel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) (J. Davis). Specifically, Bedrock is required to disclose the following:

1) the specific Google and Match.com products Bedrock is accusing of infringement (by model number if known);

2) the accused Linux source code, including an identification of the lines of code that Bedrock alleges practice the claims of the patent-in-suit in each accused Google and

quinn emanuel urquhart oliver & hedges, llp
LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

01980.51572/3180439.1

Match.com product;

3) at least one representative claim chart for each version of Linux that has different source code to carry out the allegedly infringing acts;

4) an explanation as to how Bedrock alleges the identified code practices the claims of the patent-in-suit that does not merely "mimic" the language of the claims;

5) the "structure(s), act(s), or material(s)" in each accused version of Linux that Bedrock alleges perform the claimed function(s) of the means-plus-function limitations; and

6) the specific theories of direct or indirect infringement under which Bedrock alleges Google and Match.com are liable.

In its infringement contentions, Bedrock has not satisfied these requirements. Google and Match.com are prejudiced by Bedrock's failure to provide adequate disclosure of its infringement theories and consequently are "unable to crystallize [their] non-infringement and invalidity theories, and . . . are hindered in identifying what claim terms need construction." *Connectel*, 391 F. Supp. 2d at 528 ("[W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, *as the Patent Rules require*, the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond.") (emphasis added).

We address the deficiencies in detail below.

### 1) <u>Failure to Identify any Specific Accused Products</u>

Perhaps the most glaring deficiency in Bedrock's infringement contentions is the failure to identify any accused products. Rather than identifying accused products, Bedrock instead claims that some unidentified "computer equipment configured with or utilizing software based on" certain Linux versions infringes. Bedrock does not clarify what it means by "computer equipment," nor does it provide even a general description of the purpose the "computer equipment" serves when used to commit the allegedly infringing acts. This vague identification of "computer equipment" does not comply with the Local Patent Rules.

Under the rules, the identification of "each accused apparatus, product, device, process, method, act, or other instrumentality . . . shall be *as specific as possible*." P.R. 3-1(b) (emphasis added). With respect to the level of detail required, the rules provide that "[e]ach product, device, and apparatus must be identified by name or model number, if known." *Id*. Similarly, "[e]ach method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process." *Id*. The vague reference to "computer equipment" is not an identification of the "name or model number" of the allegedly infringing Google and Match.com products. Indeed, to comply with its Rule 11 obligations, Bedrock must have analyzed Google and Match.com products, including

inspecting all publicly available materials, before it filed its complaint. *See, e.g., View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2000). Accordingly, Google and Match.com request that Bedrock meet its obligations under Local P.R. 3-1(b) by identifying with as much specificity as possible the "computer equipment" it contends infringes the patent-in-suit.

### 2) **Failure to Identify the Accused Source Code**

Bedrock's infringement contentions also fail to explain how the publicly available Linux source code infringes claim limitations of the patent-in-suit. For some of the claim limitations, Bedrock only cites one or more "functions" or "data structures" and makes the conclusory allegation that "code in" those functions or data structures performs the limitation. Rather than describing how the cited functions or data structures meet the limitations, Bedrock merely "mimic[s] the claim language of the patents-at-issue" for each limitation. *Connectel, LLC*, 391 F. Supp. 2d at 258. Google and Match.com cannot ascertain from these allegations which specific source code within the accused functions or data structures Bedrock contends satisfies the limitations of the claims.

Bedrock also suggests that other "necessary" source code is used to meet the claim limitations, but does not identify that source code. For example, footnote 2 of its claim chart states:

> Bedrock's identification of specific routines is not intended to identify all of the code necessary to satisfy the claim limitation at issue. Other source and/or object code components, such as routines, functions, methods, macros, classes, data structures, libraries etc. may be necessary. Furthermore, these identified code components may be called by or call other code components. Also, the code components identified are normally the first or the most relevant in a series of code components and are intended to reference the entire function path.

In this footnote, Bedrock admits that it has not identified "all of the code necessary to satisfy the claim limitations" in the asserted claims. Bedrock apparently has this information in its possession, but has withheld it from Google and Match.com in its infringement contentions. This is improper and Bedrock must amend its infringement contentions to identify the "necessary" source code at issue.

Bedrock also tries to justify the lack of detail in its infringement contentions by claiming that the "actual source code of Linux that is installed on [Defendants'] servers and other device(s) is not publicly available and has not yet been produced for inspection." While Google and Match.com do not dispute that they have not yet produced their source code, Bedrock has accused over 40 different versions of publicly available Linux source code in its infringement

contentions.[1] At a bare minimum, Bedrock must explain how the code in these publicly available versions meets the claim limitations. If Bedrock is unwilling to chart the publicly available versions of Linux it has accused Google and Match.com of infringing, then it should remove those versions from its infringement contentions. *See Orion IP, LLC v. Staples, Inc.*, No. 2:04-CV-297, at *3 (E.D. Tex. July 7, 2005) (J. Davis) ("When information is publicly available, the Patent Rules require a plaintiff to set forth specific theories of infringement at the outset of the case.").

### 3) <u>Failure to Provide Claim Charts for Different Versions of Linux</u>

Bedrock identifies more than 40 different Linux versions[2] as allegedly infringing in a single claim chart. And despite acknowledging that "the specific source and/or object code components may vary between the identified versions of Linux," Bedrock fails to identify any differences between these versions.

However, under the Patent Local Rules, it is Bedrock's burden to identify any differences in the versions of Linux accused of infringement and to show how the claim limitations are satisfied by the different code in these versions. *See* P.R. 3-2(c) (requiring patentee to prepare and serve "[a] chart identifying specifically where *each* element of *each* asserted claim is found within *each* Accused Instrumentality") (emphasis added).

While Google and Match.com acknowledge that it may be permissible to provide a representative chart for versions of Linux that have the same allegedly infringing code, Bedrock must amend its claim charts to specifically identify the accused aspects of the identified code for *each* Linux version that uses *different* code to perform the allegedly infringing acts. Providing a single generic chart for each defendant[3] that does not accurately reflect all accused versions of Linux is not sufficient. If Bedrock contends that each accused version of Linux includes the same allegedly infringing code – that is, any varations are of non-accused code – please explain your basis for that contention.

---

[1] Linux source code is made available at, among many other places, the following website: http://www.kernel.org/. For example, source code for the earliest accused Linux version (2.4.22) can be found here: http://www.kernel.org/pub/linux/kernel/v2.4/. The other accused versions are available as well. *See* http://www.kernel.org/pub/linux/kernel/.

[2] This number does not reflect the 300+ iterations of these versions, which Bedrock denotes with the notation 'x'. For example, Bedrock identifies "software based [on] Linux version 2.4.22.x, 2.4.23.x, 2.4.25.x" and so forth. Numerous Linux versions include five or more iterations. Some – such as version 2.6.16 – include more than 50 iterations.

[3] The lack of specificity in the claim charts is compounded by the fact that the claim chart for each defendant is substantively identical.

### 4) Failure to Adequately Identify the "identity of the structure(s), act(s), or material(s) in the Accused Instrumentalit[ies]" for Elements Governed by 35 U.S.C. § 112(6)

Certain asserted claims of the patent-in-suit include means-plus-function limitations, which are governed by 35 U.S.C. § 112(6). For each such claim, Local P.R. 3-1 requires that Bedrock identify specifically "the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." P.R. 3-1(c). Yet, for all the claims, Bedrock fails to disclose which particular aspects of the accused products allegedly perform the claimed function. In fact, as discussed above, Bedrock never identifies a single accused product of either Google or Match.com. Bedrock must therefore amend its infringement contentions to specifically identify the structure(s), act(s) or material(s) in the accused Google and Match.com products that perform the claimed function.

### 5) Failure to Set Forth Specific Theories of Direct Infringement

Bedrock states in its infringement contentions that each Defendant "makes, uses, sells, offers to sell *or* imports (*or* actively induces or contributes to same)" the accused instrumentalities. This assertion – which is made in the disjunctive and appears to be a mere recitation of the patent statute – does not identify Bedrock's specific theory or theories of direct infringement. Nor does it rule out any theory. This kitchen-sink approach of alleging every potential direct infringement theory does not comply with the Local Patent Rules and fails to answer the following fundamental questions relating to Bedrock's direct infringement allegations against each of Google and Match.com.

With respect to Google, Bedrock does not answer the following questions:

- What are the accused products that Google allegedly makes?
- What are the accused products that Google allegedly uses?
- What are the accused products that Google allegedly sells?
- What are the accused products that Google allegedly offers to sell?
- What are the accused products that Google allegedly imports?

Similarly, with respect to Match.com, Bedrock does not answer the following questions:

- What are the accused products that Match.com allegedly makes?
- What are the accused products that Match.com allegedly uses?
- What are the accused products that Match.com allegedly sells?

- What are the accused products that Match.com allegedly offers to sell?

- What are the accused products that Match.com allegedly imports?

Bedrock must provide amended infringement contentions that answer each of the questions above with specificity. If Bedrock cannot answer any of these questions, then Bedrock should amend its infringement contentions to set forth the specific theories of direct infringement it has against Google and Match.com or else withdraw such accusations.

### 6) **Failure to Set Forth Specific Theories of Indirect Infringement**

Bedrock also provides no specific information relating to its allegations of indirect infringement. Bedrock simply asserts that, in addition to the acts of direct infringement, Google and Match.com may "actively induce[] or contribute[]" to direct infringement. In addition to the missing information discussed above, Bedrock fails to identify any direct infringers that Google and Match.com are allegedly inducing to infringe; how Google and Match.com have the requisite knowledge for an allegation of inducement infringement; and what actions of Google and Match.com allegedly constitute the requisite inducement. If Bedrock is indeed accusing Google and Match.com of indirect infringement, then Bedrock must identify its specific theories of how Google and Match.com are inducing or contributing to the infringement of others or else withdraw such accusations.

### 7) **Improper Allegations of Infringement under the Doctrine of Equivalents**

Finally, Bedrock improperly alleges both literal infringement and infringement under the doctrine of equivalents. Specifically, for each limitation, Bedrock alleges literal infringement but also alternatively alleges that if the limitation is "construed so as to be not literally present," then the "Accused Instrumentalities meet the recited limitation under the doctrine of equivalents." This alternative allegation is inappropriate under the Patent Local Rules. Patent Rule 3-1 provides that the patentee must disclose "whether each element of each asserted claim is claimed to be literally present *or* present under the doctrine of equivalents." P.L.R. 3-1(d) (emphasis added). The rules do not permit a patentee to allege both theories for each limitation – even if the second theory is a fail-safe.

We presume from the language in the claim chart that Bedrock intends to rely on its literal infringement allegations. If after claim construction, Bedrock determines it must rely on a theory of infringement under the doctrine of equivalents, then it can seek agreement or permission to amend its infringement contentions accordingly. If, however, we are mistaken and Bedrock intends to rely on the doctrine of equivalents instead of literal infringement for certain limitations, then it must amend its infringement contentions to state those theories with specificity.

\* \* \*

Google and Match.com seek to avoid unnecessary motion practice. Accordingly, please confirm by Wednesday, November 4, 2009, that Bedrock will amend its infringement contentions consistent with the above within a reasonable time (not to exceed two weeks). If you are unwilling to do so, please provide your availability for a meet and confer on these issues.


Best regards,

Todd M. Briggs

# MCKOOL SMITH

A PROFESSIONAL CORPORATION • ATTORNEYS
300 Crescent Court
Suite 1500
Dallas, Texas 75201

Doug Cawley
Direct Dial: (214) 978-4972
dcawley@mckoolsmith.com

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

November 4, 2009

**VIA EMAIL (toddbriggs@quinnemanuel.com)**

Todd Briggs
Quinn Emanuel LLP
555 Twin Dolphin Drive
Suite 560
Redwood Shores, CA 94065

RE: *Bedrock Computer Techs., LLC v. Softlayer Techs., Inc. et al.*, Civil Action No. 6:09-cv-269 (E.D. Tex)

Dear Todd:

    I write in response of your letter on October 30, 2009 regarding Bedrock's infringement contentions that were served on October 9, 2009.

    Bedrock's infringement contentions fully comply with the Patent Rules. Your letter requests that Bedrock amend its contentions to address the following alleged insufficiencies:

(1) the specific Google and Match.com products Bedrock is accusing of infringement (by model number if known);

(2) an explanation as to how Bedrock alleges the identified code practices the claims of the patent-in-suit;

(3) a claim chart for each different version of Linux;

(4) an identification of the structures, acts, or materials in each of the accused versions of Linux that Bedrock alleges perform the claimed function of limitations governed by 35 U.S.C. § 112 ¶ 6;

(5) specific theories of direct infringement;

(6) specific theories of indirect infringement; and

(7) alleging both theories of literal infringement and infringement under the doctrine of equivalents.

Given that most of these requests are similar to requests made by Alan Whitehurst and given that you received my October 29th letter responding to those requests, you will not be surprised by the majority of my responses. Regardless, I will separately address each of these requested amendments below.

### Requested Amendment 1: The Specific Google and Match.Com Products That Bedrock Is Accusing of Infringement

Bedrock satisfied is P. R. 3-1 obligations by disclosing the Accused Instrumentalities. Bedrock's infringement contentions identify the Accused Instrumentality as "Computer equipment configured with or utilizing software based on an Accused Version of Linux" and defines Accused Version of Linux as "software based on Linux version 2.4.22.x, 2.4.23.x, 2.4.24.x, 2.4.25.x, 2.4.26.x, 2.4.27.x, 2.4.28.x, 2.4.29.x, 2.4.30.x, 2.4.31.x, 2.4.32.x, 2.4.33.x, 2.4.37.x, 2.6.0.x, 2.6.1.x, 2.6.2.x, 2.6.3.x, 2.6.4.x, 2.6.5.x, 2.6.6.x, 2.6.7.x, 2.6.8.x, 2.6.9.x, 2.6.10.x, 2.6.11.x, 2.6.12.x, 2.6.13.x, 2.6.14.x, 2.6.15.x, 2.6.16.x, 2.6.17.x, 2.6.18.x, 2.6.19.x, 2.6.20.x, 2.6.21.x, 2.6.22.x, 2.6.23.x, 2.6.24.x, 2.6.25.x, 2.6.26.x, 2.6.27.x, 2.6.28.x, 2.6.29.x, 2.6.30.x, or 2.6.31." To Bedrock's knowledge, neither Google nor Match.com market these Accused Instrumentalities as products that have names, which is what you seem mean in your use of the word "product." Therefore, there are no "products" that Bedrock could identify. The Defendants have been aware of this for some time now. *See* Plaintiff's Response to MySpace, Amazon.com, AOL, CME Group, and Yahoo!'s Motion to Dismiss for Failure to State a Claim (Dkt. No 84) at 5 n.2.

### Requested Amendment 2: An Explanation as to How Bedrock Alleges the Identified Code Practices the Claims of the Patent-in-Suit

In your letter, you label this request under the heading "Failure to Identify the Accused Source Code." You recognize, however, that Bedrock cites, in its infringement contentions, to functions and data structures. It is apparently your belief that this is not enough, as you go on to say that Bedrock must "desrcib[e] how the cited function or data structures meet the limitations." The type of information that you seem to be requesting here will by provided in Bedrock's expert reports, and Bedrock is not required to provide expert analysis in its infringement contentions.

Also, you identify this request under the alternative heading "the accused Linux source code, including an identification of the lines of code that Bedrock alleges practice the claims of the patent-in-suit in each accused Google and Match.com product." You do not repeat your request for line number of source code in the body of your letter. In any event, Bedrock's response is that this request is specious. First, P. R. 3-1 does not require a plaintiff to disclose line numbers of accused software in its infringement contentions. Second, because Bedrock's infringement contentions already identify, by name, the infringing routines and data structures as well as the file paths in which they reside, including line numbers would be completely redundant in that it would provide no additional information.

### Requested Amendment 3: A Claim Chart for Each Different Version of Linux

At any given time, there are several stable versions of Linux and one development version. Linux supports many older stable versions, which is why multiple versions exist. Linux version numbers follow a have three numbers, i.e., X.Y.Z. The "X" is incremented when there is

a change that makes software written for one version no longer operate correctly on the other. The "Y" indicates the development series. The "Z" specifies the exact version of the kernel, and it is incremented on every release. Bedrock's infringement charts additionally contain a ".x" after the X.Y.Z numbering scheme to encompass the "point releases." Bedrock identified Linux version 2.4.22.x and every stable version released thereafter as an Accused Version of Linux.

This numbering scheme is different from numbering schemes of proprietary software, but a comparison between the two is instructive. Taking Microsoft Windows as an example of proprietary software, my computer tells me that I'm running Microsoft Windows XP SP3. That indicates that I've installed the third service pack for Windows XP on my computer; however, there is no indication as to what other dynamic link libraries (DLLs) are installed on my computer through Microsoft's automatic updates feature. And while each combination of these DLLs and service packs technically constitutes a "version" and while there are possibly hundreds or even thousands of such unnamed versions, the Patent Rules would probably only require a plaintiff who is accusing Windows XP of infringement to provide one chart for Windows XP. Similarly, by identifying the first infringing version of Linux and every stable version released thereafter, Bedrock's infringement charts comply with the Patent Rules even though there exists an explicit version number for each version of Linux.

Also, Bedrock consolidated the Accused Versions of Linux into one chart for the Defendants' convenience. In my October 29th letter to Alan Whitehurst, I attached expanded claim charts pertaining to certain defendants.[1] In them, Bedrock has created contentions for each Accused Version of Linux. These were not amended claims charts; rather, these attachments merely repeat the substance of Bedrock's infringement contentions separately for each version of Linux. The only difference between the charts is that the charts served on October 9th were about 25 pages per Defendant while the charts attached to my October 29th letter were about 810 pages per Defendant. By organizing the infringement contentions in the original manner, it was Bedrock's intention to reveal its crystallized theories of infringement in a way that would be clearest to the Defendants. Your argument regarding the differences between the route.c file across the different accused versions of Linux misses the point. As demonstrated by the expanded claim charts that accompanied my October 29th letter to Alan Whitehurst, Bedrock would have described—and now, has described—its infringement contentions for every version of Linux in exactly the same terms.

With respect to *ConnecTel, LLC v. Cisco Sys., Inc.*, 391 F.Supp.2d 526 (E.D. Tex 2005), Bedrock agrees that if it only mimicked the claim language of the patent-in-suit, its infringement contentions would be deficient. Bedrock, however, did not merely mimic the claim language. Judge Davis, in *ConnecTel*, pointed out that "[t]he charts in ConnecTel's PICs do not refer in their text to a single structure, process, algorithm, feature or function of any accused product." 359 F.Supp.2d. at 528. In contrast, Bedrock's infringement contentions cite specific routine(s) or data structure(s) that meet each limitation. Also, Judge Davis "viewed plaintiff's pre-suit diligence with favor" when recalling the PICs in *American Video Graphics*, noting that such

---

[1] I understand that you recently had a phone call with Austin Curry and that he offered similar, expanded claim charts for your clients. You indicated that you were not interested in these charts.

diligence resulted in plaintiff's "only wanting to view precise pieces of source code to build its case." *Id*. (citing *American Video Graphics, L.P. v. Electronic Arts, Inc.* 359 F.Supp.2d 558, 560-61). Similarly here, Bedrock's infringement contentions focus on just route.c, which is a single file of source code within the huge body of Linux source code.

### Requested Amendment 4: An Identification of the Structures, Acts, or Materials in Each of the Accused Versions of Linux That Bedrock Alleges Perform the Claimed Function of Limitations Governed by 35 U.S.C. § 112 ¶ 6;

While some of the limitations in the patent-in-suit contain means-plus function limitations, the Court has not yet construed which terms are actually governed by 35 U.S.C. § 112(6). But by identifying specific routines and data structures, Bedrock has identified what would serve as the structure(s) for any such limitation(s). Your criticism that Bedrock did not cite the code that performs the claimed function is misplaced; the Patent Rules only require that Bedrock identify the structure. *See* P. R. 3-1(c). In any event, given that the patent-in-suit provides pseudocode and that Bedrock identifies specific routines and data structures, the Defendants should be able to easily discern how the structures that Bedrock cites perform the claimed function of any limitation found to be controlled by § 112(6).

### Requested Amendment 5: The Specific Theories of Direct Infringement under which Bedrock Alleges the Defendants Are Liable

Your letter points out that Bedrock did not provide any factual information to indicate how each Defendant "makes, uses, sells, offers to sell or imports (or actively induces or contributes to same)" the Accused Instrumentalities. This is not a requirement of P. R. 3-1. Further, the questions that you pose to me in your letter under this section presuppose there being a "product." As I explained above, to Bedrock's knowledge, neither Google nor Match.com market these Accused Instrumentalities as products that have names, which is what you seem mean in your use of the word "product."

### Requested Amendment 6: Information Regarding Bedrock's Allegations of Indirect Infringement.

Similarly, your letter points out that Bedrock did not provide any factual information to related to indirect infringement. This is not a requirement of P. R. 3-1.

### Requested Amendment 7: Specific Doctrine of Equivalents Theories.

You state that the Patent "[R]ules do not permit a patentee to allege both theories for each limitation—even if the second theory is a fail-safe." To support this statement, you emphasize the "or" in P. R. 3-1(d), which states, "whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents." The "or" in P. R. 3-1(d) is not a logical "exclusive-or." A plaintiff, such as Bedrock, can assert alternative theories of infringement in its infringement contentions, including a mix of literal infringement theories and infringement theories under the doctrine of equivalents.

For the reasons stated above, Bedrock will not amend its infringement contentions. And because Bedrock has fully complied with its obligations under P. R. 3-1, the Defendants are suffering no prejudice.

      Your letter requests that I provide you with dates for a meet and confer on these issues. I believe that counsel for Match.com and Google were on the November 3rd meet and confer between Alan Whitehurst and me. On that call, I agreed that I would not contest your compliance with the meet and confer requirement for a motion to compel for the amendments that you request in your October 30th, 2009 letter.

                                                 Sincerely,

                                                 /s/ Douglas Cawley

                                               Douglas Cawley