IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **BEDROCK COMPUTER TECHNOLOGIES LLC,** | § § § | |
| Plaintiff, | § § | CASE NO. 6:09-cv-269-LED |
| v. | § § | **Jury Trial Demanded** |
| **SOFTLAYER TECHNOLOGIES, INC.,** et al. | § § § | |
| Defendants. | § | |

**PLAINTIFF BEDROCK COMPUTER TECHNOLOGIES LLC'S RESPONSE
TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO
COMPLY WITH PATENT RULE 3-1 AND TO EXTEND
<u>THE TIME TO SERVE INVALIDITY CONTENTIONS</u>**

| I. | INTRODUCTION | 1 |
| --- | --- | --- |
| II. | ARGUMENT | 2 |
| | A. Bedrock Provided Specific Disclosures of Infringement and Therefore Complied with P.R. 3-1 | 2 |
| |     1. Bedrock complied with P.R. 3-1 by citing specific source code functions for each element of each asserted claim. | 2 |
| |     2. Defendants' complaints about Bedrock's infringement contentions are hollow, and the Defendants are wrong about the requirements of P.R. 3-1. | 3 |
| | B. Bedrock Consolidated All Versions of Linux into a Single Chart for Defendants' Convenience. | 9 |
| | C. Bedrock's Responses to the Defendants' Miscellaneous Complaints. | 10 |
| |     1. Bedrock disclosed the structures for means-plus-function limitations. | 10 |
| |     2. Bedrock may simultaneously seek relief on theories of both direct and indirect infringement. | 11 |
| |     3. Bedrock is not required to choose between theories of literal infringement and infringement under the doctrine of equivalents. | 11 |
| III. | CONCLUSION | 11 |

## I. INTRODUCTION

Pursuant to the District's Patent Rules, Bedrock served infringement contentions that put Defendants on fair notice of what Bedrock is accusing. Bedrock identified the precise functions and data structures within the accused Linux source code that perform each limitation of each asserted claim. Requiring further detail is not required by the Rules and would unduly burden Bedrock: Since its infringement contentions fully answered the question of *where* infringement occurs in the accused instrumentalities, any supplementation would force Bedrock to wade into the waters of *how* infringement occurs in the accused instrumentalities.

P.R. 3-1(c) requires "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." In compliance with P.R. 3-1, Bedrock's infringement contentions disclose, for each element of each asserted claim, the specific source code that is responsible for practicing that element. Even cursory review of Bedrock's infringement charts show compliance with the Rule: The charts are organized into separate rows for each element, and there are citations to source code for each element in every row. (*See, e.g.*, Dkt. No. 133-2.) Further, although Defendants pay lip service to their position that Bedrock did not identify where infringement occurs, Defendants admit—as they must—that "Bedrock's [infringement] chart referred to Defendants' alleged use of certain functions and data structures in the 'route.c' module of Linux . . ." (Dkt. No. 133 at 5.) Thus, there is no genuine dispute as to whether Bedrock specifically identified where infringement occurs in the Accused Products. The remaining disputes that Defendants raise in their motion either have nothing to do with P.R. 3-1 (*e.g.*, whether Bedrock is required to explain *how* the identified code practices the asserted claims) or are simple misreadings of P.R. 3-1 (*e.g.*, whether P.R. 3-1(c) requires Bedrock to disclose which limitations it contends are governed by 35 U.S.C. § 112(6)). As such,

Defendants' motion, styled as one asking the Court to compel Bedrock to comply with P.R. 3-1, should be denied.

## II. ARGUMENT

### A. Bedrock Provided Specific Disclosures of Infringement and Therefore Complied with P.R. 3-1.

#### 1. Bedrock complied with P.R. 3-1 by citing specific source code functions for each element of each asserted claim.

Bedrock's detailed claim charts follow P.R. 3-1(c) to the letter by identifying as specifically as possible "where each element of each asserted claim is found within each Accused Instrumentality." Bedrock disclosed at least one function or data structure in the accused source code that performs each limitation of each asserted claim. (*See generally* Dkt. No. 133-2.) Even in the excerpt of Bedrock's claim charts quoted in Defendants' motion, Bedrock identifies functions and/or data structures by name and location:

| Claim Language: Element 1(c) | Bedrock's Infringement Contention |
|---|---|
| the record search means including a means for identifying and removing at least some of the expired ones of the records from the linked list when the linked list is accessed, and | Specifically, code contained within function rt_intern_hash, as invoked by functions ip_route_input_mc, ip_mkroute_input, ip_route_input_slow, ip_mkroute_output, ip_rt_redirect, and/or ip_route_output_slow in module /net/ipv4/route.c, comprises record search means including a means for identifying and removing at least some of the expired ones of the records from the linked list when the linked list is accessed or its equivalent. |

(Dkt. No. 133 at 9.)

Similar to the example above, every element of every asserted claim in Bedrock's infringement contentions discloses the corresponding functions and/or data structures by name and location. In other words, Bedrock specified particular functions in the source code for each limitation of each asserted claim. *See Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 561 (E.D. Tex. 2005) (requiring plaintiff "to supplement its 3-1(c) charts with specific references to the source code"). Bedrock's specific references to functions—*e.g.*,

ip_rout_input_mc, ip_mkrout_input, ip_route_input_slow—follow the teachings in *ConnecTel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526 (E.D. Tex. 2005), where this Court found ConnecTel's claim charts noncompliant with P.R. 3-1 because they "do not refer in their text to a single *structure*, process, algorithm, feature or *function* of any accused product." *Id.* at 528 (emphasis added). In contrast to ConnecTel's deficient claim charts, Bedrock's claim charts specifically identify *functions* and *data structures* "on a claim by claim, element by element basis." *Id.* Through the specificity provided in Bedrock's infringement contentions, Bedrock gave the "defendants fair notice of infringement beyond that which is provided by the mere language of the patent claims themselves." *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006).

> 2. **Defendants' complaints about Bedrock's infringement contentions are unfounded, and the Defendants are wrong about the requirements of P.R. 3-1.**

The Defendants contend that Bedrock's citation to source code in its infringement contentions fails to comply with P.R. 3-1 for several unavailing reasons: (i) "the functions or data structures Bedrock identifies contain hundreds of lines of code and call dozens of other functions"; (ii) some of the functions called by the cited functions "are not defined in the route.c file"; and (iii) each of the functions called by the cited functions "in turn, call other functions."[1]

---

[1] Defendants repeatedly attempt to bolster these complaints by pointing out that the Linux kernel is publicly available. (*See* Dkt. No. 133 at 1, 2, 3, 4, 11.) This is a red herring. This lawsuit involves more than just the publicly-available Linux source code. Bedrock does not yet know which parts of which Linux versions Defendants have individually customized for their own use. Just because many Linux source code versions are available free of charge to the public does not mean that Bedrock somehow knows what modifications the various Defendants have added to their Linux software. Bedrock has served its interrogatory No. 3 to obtain discovery on Defendants own modifications to their versions of Linux. (Ex. C at 8.) Thus, the non-publicly available modifications in the case at hand are similar to source code in *American Video Graphics*, where the Court held that the plaintiff had complied with P.R. 3-1 to the best of its ability before the defendants had provided the plaintiff with access to their source code. 359 F. Supp. 2d at 561.

(Dkt. No. 133 at 9.) These complaints are unfounded. Bedrock, in its infringement contentions, identified the infringing source code at the level of granularity demanded by the claim elements. While P.R. 3-1 requires a plaintiff to identify "specifically" where infringement occurs, there is no requirement that a plaintiff describe the inner workings of what is identified as practicing a claim element. To illustrate this point with an example, if an asserted claim required an "engine," then Defendants' view of P.R. 3-1 would require a plaintiff to identify not just an accused engine but *all* of the sub-components of an engine, such as the carburetor, the pistons, the spark plugs, etc. In this way, Defendants' complaint that Bedrock's citation to the "rt_intern_hash function does nothing to narrow the scope of potentially infringing code"—just because rt_intern_hash calls thirteen sub-functions—is disingenuous at best. The sub-functions do not somehow render vague Bedrock's specific identification of the location of the infringement. And if Bedrock were required to supplement its infringement contentions with discussions of the sub-functions, Bedrock would necessarily need to delve into *how* the identified functions infringe. As discussed below, this type of analysis is not required or appropriate in P.R. 3-1 disclosures. Further, in patent infringement cases involving source code, a defendant could always lodge these same complaints and demand the identification of sub-functions, then sub-sub-functions, *ad infinitum*.[2]

In an attempt to find authority for their dubious views of P.R 3-1, Defendants both misread the Court's holding in *Michael S Sutton Ltd. v. Nokia Corp.*, No. 6:07CV203, Dkt. No.

---

[2] Bedrock attempted to explain this very point, *i.e.*, that functions do not exist in a vacuum, in its infringement charts. (*See* Dkt. No. 133-2 at 1 n.1). The Defendants contort this explanation and argue that Bedrock "disclaimed any responsibility to identify the accused code." (Dkt. No. 133 at 10.) Not true. Bedrock's statement is not a disclaimer of responsibility but merely recognition that source code components have sub-components and are, themselves, sub-components of a larger software system.

59 (E.D. Tex. Feb. 13, 2009) (attached as Ex. A),[3] and ignore the Court's teachings in *ConnecTel*. Defendants contend that this Court in *Sutton* "recently ruled that mere identification of functions in source code was not enough to satisfy a plaintiff's Rule 3-1 obligations." (Dkt. No. 133 at 10.) Not so. Rather, the Court in *Sutton* considered the following, clearly deficient claim chart excerpt:

| (2) if a data message,<br>(a) analysing it to determine if it can be compressed according to a known compression technique and if so compressing the data by that technique,<br>(b) if compression was not possible, and if the data consists of characters which are uniquely determined by 7 bits, treating the data as a 7 bit character string and stuffing the 7 bit character string into an 8 bit string,<br>(c) assigning a sub-channel number to data which is processed according to steps 2(a) or (b) or which has not been so processed, | Reference is made to Exhibit 4-B.<br>The Editor_HandleMessagePackingEvents function calls the EMS_Packer function implemented in emspacker.c<br><br>Reference is made to Exhibit 4-C<br>EMS_Packer states that this "routine packs the internally represented message data into a linked list of SMS_PACKETS_LIST.<br>Calls EMS_PackWithForwarding<br>A call is made to the function CompressEMSData. |
|---|---|

(Ex. A at 2.) The defendant in *Sutton* rightfully complained that "although the limitations of (2)(a) through (2)(c) identify separate steps of claim 1, Sutton merely groups all of them together, makes reference to exhibits, and lists various functions while not specifically identifying which of the listed functions relate to which step." (*Id.* at 3.) The Court agreed and held that the claim chart excerpt "does not point specifically to where each step is found." (*Id.* at 5 ("Thus [the defendant] is left guessing as to the alleged location of the steps in the source code.").) In contrast, Bedrock explicitly charted the elements of each claim and, for each element, Bedrock identified where in the Linux source code that element is found. As a result, Bedrock's infringement contentions do not offend *Sutton*. (*See id.* at 5 ("Grouping two elements

---

[3] Citations to Exhibits in the form of "Ex. _" used throughout this brief refer to Exhibits to the Declaration of Jonathan R. Yim, filed concurrently with this brief.

together and referencing a seven-page source code does not clarify where the elements are allegedly located.").)

Furthermore, and contrary to the Court's guidelines set out in *ConnecTel* that allow for the identification of functions in satisfying P.R. 3-1, Defendants request Bedrock to identify lines of code (in addition to the identification of the code components themselves) in its claim charts. (*See* Dkt. No. 133 at 11; *see also* Dkt. No. 133-6.) But Defendants have not presented any authority in support of this request—and Bedrock has been unable to locate authority from any United States jurisdiction requiring the identification of lines of code in claim charts. In any event, because Bedrock's infringement contentions already identify, by name, the infringing functions, routines, and data structures as well as the file paths in which they reside, including line numbers would be completely redundant because it would provide no additional information to Defendants.

Finally, Defendants allege that Bedrock's claim charts "mimic the claim language" just as the plaintiff's claim charts did in *ConnecTel*. (Dkt. No. 133 at 9.) This Court in *ConnecTel* ordered supplementation of claim charts because the claim charts "do not refer in their text to a single structure, process, algorithm, feature of function of any accused product," 391 F. Supp. 2d at 528, as exhibited by the following excerpt from ConnecTel's deficient claim charts:

| | |
|---|---|
| 2. The method of claim 1 in which said determining step analyzes a set of programmed user priorities in determining which of said paths provides the optimal set of characteristics for transferring the file to the remote destination. | The Cisco Routers analyze a set of programmed user priorities in determining which of the paths provides the optimal set of characteristics for transferring the file to the remote destination.[7] |
| 3. The method of claim 2 in which the user priorities are predefined and stored in said switching system memory. | In the Cisco Routers, the user priorities may be predefined and stored in the memory.[8] |
| 4. The method of claim 3 in which said predefined user priorities may be changed by a user prior to said analysis step. | In the Cisco Routers, the predefined user priorities may be changed by a user prior to analyzing the programmed user priorities.[9] |
| 5. The method of claim 2 in which telecommunications path variable parameters comprises the data transfer speed of said path at a given point in time. | In the Cisco Routers, the path variable parameters may be the data transfer speed of the data path at a given point in time.[10] |
| 6. The method of claim 2 in which said telecommunications path predetermined parameters comprises the cost per unit time of utilizing said path. | In the Cisco Routers, the path predetermined parameters may be the cost per unit time of utilizing said data path.[11] |
| 7. The method of claim 6 in which said cost per unit time is a function of the current time of day. | In the Cisco Routers, the cost per unit time may be a function of the current time of day.[12] |
| 8. The method of claim 6 in which said cost per unit time is a function of the current day of week. | In the Cisco Routers, the cost per unit time may be a function of the current day of week.[13] |
| 9. The method of claim 1 in which said telecommunications path predetermined parameters comprises a measure of data transfer reliability of said path. | In the Cisco Routers, the path predetermined parameters may be a measure of data transfer reliability of the data path.[14] |
| 10. The method of claim 1 in which said telecommunications path predetermined parameters comprises a measure of data transfer bandwidth of said path. | In the Cisco Routers, the path predetermined parameters may include a measure of data transfer bandwidth of the data path.[15] |

(Ex. B, Attachment A at 2.) In contrast, Bedrock's claim charts identify specific functions, as quoted in Defendants' motion:

| Claim Language: Element 1(c) | Bedrock's Infringement Contention |
|---|---|
| the record search means including a means for identifying and removing at least some of the expired ones of the records from the linked list when the linked list is accessed, and | Specifically, code contained within function rt_intern_hash, as invoked by functions ip_route_input_mc, ip_mkroute_input, ip_route_input_slow, ip_mkroute_output, ip_rt_redirect, and/or ip_route_output_slow in module /net/ipv4/route.c, comprises record search means including a means for identifying and removing at least some of the expired ones of the records from the linked list when the linked list is accessed or its equivalent. |

(Dkt. No. 133 at 9.) Because Bedrock's claim charts specify the functions that perform each step in the asserted claims, Bedrock's claim charts do not merely mimic the claim language, and they do not offend *ConnecTel*.

Further, Defendants cite *ConnecTel* for the proposition that Bedrock must explain "*how* the code within the function or structure meets the corresponding claim limitation." (Dkt. No. 133 at 9 (emphasis added).) Such a request would require expert-type analysis with the guidance of claim construction. Expert analysis is not appropriate for P.R. 3-1 disclosures, because only "[e]nough specificity is required to give an alleged infringer notice of the patentee's claims." *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706 (E.D. Tex. 2008); *see Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08cv144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009) ("Infringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof."); *see also STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004) ("[Infringement contentions] are not meant to provide a forum for litigation of the substantive issues.") (citation omitted). In particular in *Sutton*, this Court held that "Patent Rule 3-1(c) does not require a detailed explanation of *how* the source code satisfies the elements of a claim." (Ex. A at 5 (emphasis added).)

### B. Bedrock Consolidated All Versions of Linux into a Single Chart for Defendants' Convenience.

Defendants complain that Bedrock consolidated multiple versions[4] of Linux into a single chart. During the meet and confer process leading up to this Motion, Bedrock provided claim charts that separated out different versions of Linux for certain Defendants and offered to provide similar, expanded charts to any Defendant that requested them. (Ex. D.) Defendants only acknowledge this by calling the charts "uncalled-for". (Dkt. No. 133 at 6.) In any event, Bedrock consolidated the versions of Linux into one chart for Defendants' convenience. In organizing the infringement contentions in the original consolidated format, it was Bedrock's intention to disclose its crystallized theories of infringement in a way that would be clearest to Defendants. *See ConnecTel*, 391 F. Supp. 2d at 527 ("Specific theories create a specific trajectory for the case. . . . [W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman,* summary judgment, trial, and beyond.").

Further, this Court in *Orion* recommended that plaintiffs faced with "innumerable" "manifestations of the alleged infringement" should provide "representative examples of alleged infringement so as to give defendants fair notice." 407 F. Supp. 2d at 817; *see ConnecTel*, 391 F. Supp. 2d at 528 (permitting plaintiff "to designate exemplar accused infringing products" in

---

[4] The Defendants repeatedly refer to "375 versions" of Linux. (*E.g.*, Dkt. No. 133 at 1, 2, 5, 12.) This is yet another red herring. The first infringing version of the Linux source code of which Bedrock is aware was version 2.4.22. Bedrock's P.R. 3-1 disclosures therefore are specifically limited to Linux version 2.4.22 and subsequent versions. (Dkt. No. 133-2.) Bedrock is unable at this time, however, to narrow its list of accused Linux versions because Defendants have yet to answer Bedrock's first interrogatory requesting information on Defendants use of Linux versions. (Ex. C at 7-8.)

satisfaction of P.R. 3-1). Thus, despite Defendants' complaint that Bedrock's infringement contentions consolidated multiple versions of Linux into one chart, Bedrock has at the very least complied with this Court's requirement in *Orion* and *ConnecTel* to cite exemplary source code. *See Orion*, 407 F. Supp. 2d at 817; *ConnecTel*, 391 F. Supp. 2d at 528.

### C. Bedrock's Responses to the Defendants' Miscellaneous Complaints.

#### 1. Bedrock disclosed the structures for means-plus-function limitations.

The disclosure of P.R. 3-1 infringement contentions in this case occurred before the P.R. 4-1 disclosure of claim terms, phrases, or clauses contended to be governed by 35 U.S.C. § 112(6). In such situations, courts have construed P.R. 3-1 infringement contentions as not requiring § 112(6) identifications if such would be premature under P.R. 4-1:

> If the exchange of documents under Patent Local Rule 3-1 takes place before a party is even obligated to state which of its claims are governed by Section 112(6), then how can Patent Local Rule 3-1 possibly obligate a party to disclose Section 112(6) claims before it has to, or is even ready to do so? The Court agrees that Section 112(6) claims do not need to be disclosed at the Patent Local Rule 3-1 disclosure stage.

*Intertrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL 23120174, at *3 (N.D. Cal. Dec. 1, 2003). Bedrock's P.R. 3-1 infringement contentions therefore need not prematurely identify structures for means-plus-function limitations. But in any event, the information provided in Bedrock's disclosures could serve as the structure and function for any limitation later determined by the Court to be governed by 35 U.S.C. § 112(6). (Dkt. No. 133-2.) Thus, Bedrock should not be required to do anything further to comply with P.R. 3-1 regarding means-plus-function claims. *See Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. CV 05-8493 PA (SJHx), 2006 WL 5097360, at *2 n.2 (C.D. Cal. June 5, 2006) ("Section 112(6) claims do not need to be disclosed in PICs because they cover the structures, materials, and acts that correspond to 'functions'").

### 2. Bedrock may simultaneously seek relief on theories of both direct and indirect infringement.

Defendants' contention that Bedrock's "alleging every potential direct and indirect infringement theory does not comply with Rule 3-1" is patently erroneous. (Dkt. No. 133 at 13.) Tellingly, Defendants cite no authority for this extreme position, and contrary to Defendants' contention, patentees often allege both direct and indirect infringement by defendants. In *i4i L.P. v. Microsoft Corp.*, ___ F. Supp. 2d ___, 2009 WL 2449024 (E.D. Tex. Aug. 11, 2009), this Court entered judgment against the defendant for both direct and indirect infringement.

### 3. Bedrock is not required to choose between theories of literal infringement and infringement under the doctrine of equivalents.

Similarly, Defendants take issue with Bedrock's allegations under theories of literal infringement and infringement under the doctrine of equivalents, contending that "[s]uch allegations in the alternative are improper under the Local Patent Rules." (Dkt. No. 133 at 14.) Again, Defendants cite no authority for this extreme position, and this Court has previously allowed both theories to go before the jury. *i4i*, 2009 WL 2449024, at *3 n.3. The Federal Circuit also disagrees with Defendants. *See Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 773 (Fed. Cir. 2002) ("Genentech's argument flies in the face of common sense and years of Federal Circuit precedent. Genentech must have known that it could initially assert both types of infringement.").

## III. CONCLUSION

For the foregoing reasons, the Defendants are not and have not been prejudiced by Bedrock's disclosures made under P.R. 3-1, and Bedrock respectfully requests that the Court deny Defendants' motion in full.

DATED: December 23, 2009

Respectfully submitted,
**McKOOL SMITH, P.C.**

/s/ *Douglas Cawley*
Sam F. Baxter
Texas Bar No. 01938000
**McKOOL SMITH, P.C.**
sbaxter@mckoolsmith.com
104 E. Houston Street, Suite 300
P.O. Box 0
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Douglas A. Cawley, Lead Attorney
Texas Bar No. 04035500
dcawley@mckoolsmith.com
Theodore Stevenson, III
Texas Bar No. 19196650
tstevenson@mckoolsmith.com
J. Austin Curry
Texas Bar No. 24059636
acurry@mckoolsmith.com
Jonathan R. Yim
Texas Bar No. 24066317
jyim@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: 214-978-4000
Facsimile: 214-978-4044

Robert M. Parker
Texas Bar No. 15498000
Robert Christopher Bunt
Texas Bar No. 00787165
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: 903-531-3535
Facsimile: 903-533-9687
E-mail: rmparker@pbatyler.com
E-mail: rcbunt@pbatyler.com

**ATTORNEYS FOR PLAINTIFF
BEDROCK COMPUTER
TECHNOLOGIES LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on December 23, 2009. Local Rule CV-53(a)(3)(A).

    /s/ Jonathan R. Yim
Jonathan R. Yim