# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| Bedrock Computer Technologies LLC, <br><br> Plaintiff, <br><br> v. <br><br> Softlayer Technologies, Inc., <br> CitiWare Technology Solutions, LLC, <br> Google Inc., <br> Yahoo! Inc., <br> MySpace Inc., <br> Amazon.com Inc., <br> PayPal Inc., <br> Match.com, LLC, <br> AOL LLC, and <br> CME Group Inc., <br><br> Defendants. | Case No. 6:09-CV-269-LED |

## JOINT MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiff Bedrock Computer Technologies ("Bedrock") and Defendants Softlayer Technologies, Inc., CitiWare Technology Solutions, LLC, Google, Inc., Yahoo!, Inc., MySpace, Inc., Amazon.com, Inc., PayPal, Inc., Match.com, LLC, AOL, LLC, and CME Group, Inc. (collectively, "Defendants") respectfully request that the Court enter a protective order in the above captioned action. The parties have been meeting and conferring about this issue and have reached an agreement as to all clauses in the proposed protective order except for two discrete issues, and the parties seek guidance from the Court on these issues. The proposed protective order notes these two disputes via redlined and bluelined text and footnotes, for the Court's reference.

1

The parties will also email a version of this document in Microsoft Word and/or WordPerfect to the Court's clerks, if needed. The parties have briefly argued their respective positions in the paragraph's below, and they request that the Court rule upon these disputes and enter the protective order, accordingly.

## PLAINTIFF'S POSITION

**Paragraph 8(B)(iii)**: Bedrock proposes the inclusion of the following provision regarding the availability of source code in its native, electronic, searchable format:

> The producing party must provide access to the source code under the same conditions and with the same limitations and restrictions as provided in Paragraph 8 for a period of time agreed upon by the parties after any expert report on non-infringement is served in the case.

This provision recognizes that the parties may need to access the Source Code Computers during the time between the end of discovery and the beginning of trial, for many reasons. For example, motions (to strike, dispositive, *Daubert*, etc.) involving source code will require examination of the source code in its native, electronic, searchable format. Additional situations requiring access to the Source Code Computers include selection of trial exhibits, preparation for trial, and facilitation of settlement. Yet Defendants have taken the position that they will revoke access to the Source Code Computers after the discovery deadline in this case. (*See, e.g.*, proposed protective order ¶ 8(B)(iv).) Without access to the Source Code Computers, a party will be restricted to non-searchable, hard-copy printouts of the source code pursuant to the remainder of Paragraph 8. This restriction would unduly burden that party—especially in light of the significant volume of source code, the file structure of the source code, and the interconnected dimension of its call functions that cannot be reproduced in hard-copy printouts. Moreover, the party producing the source code will continue to enjoy unfettered access to the source code in its native, electronic, searchable format, and this stark, arbitrary disparity of access to evidence unfairly prejudices the party without the same access. Continuing to provide identical access to

the Source Code Computers beyond the discovery period under the identical protections in Paragraph 8 will pose zero risk of additional improper disclosure of the source code.

**Paragraph 8(B)(xi)**: Bedrock proposes the inclusion of the following provision regarding the production of source code:

> The Source Code Computers shall be equipped with a printer to print copies of the source code on yellow, pre-Bates numbered paper, which shall be provided by the producing party.

This provision merely tracks standard language in the protective orders entered in other software cases. *E.g.*, *i4i L.P. v. Microsoft Corp.*, No. 6:07-CV-113-LED, Dkt. No. 26 ¶ 19(c) (E.D. Tex. Aug. 7, 2007) ("The producing party must allow printing of paper copies of code at the time of inspection by the requesting party, which the requesting party may take away upon completing an inspection."). In contrast, Defendants' proposed language requires a requesting party to *identify* which portions of the source code it would like for the producing party to print. In other words, Defendants seek to discover precisely which lines of source code Bedrock's reviewers are inspecting, all the while discovery is in process and Bedrock is developing its infringement case. Identifying to Defendants which lines of source code Bedrock's reviewers are inspecting would impermissibly invade Bedrock's work product. *See SEC v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006) ("documents, including business records, that were specifically selected and compiled by a party or its representative in preparation for litigation are opinion work product because the mere acknowledgement of their selection would reveal mental impressions concerning the potential litigation"); *see also Petersen v. Douglas County Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992). Furthermore, Bedrock anticipates that its reviewers of Defendants' source code will be consulting experts who will not testify at trial, and the proposed discovery orders of both Bedrock and Defendants absolutely bar discovery from a consulting expert. (Dkt. No. 106-4 ¶ 6; Dkt. No. 106-5 ¶ 6.) And even if Bedrock's consulting experts' compilation of source code were not interpreted to be work product, Defendants' intrusion into Bedrock's preparation of its case on this central issue would be unfairly prejudicial. Defendants

3

have informed Bedrock that their proposed language is intended to protect their source code. But this is hollow justification for peering into Bedrock's internal analysis of source code because the remainder of Paragraph 8 of the proposed protective order is comprehensive in ensuring that source code will not be improperly disclosed. In sum, Bedrock proposes standard procedure, and Defendants attempt to discover Bedrock's consulting experts' internal analysis of source code.

**DEFENDANTS' POSITION**

I. **Defendants' Position Regarding The Length Of Time Source Code Is Available For Inspection**

Bedrock seeks access to Defendants' source code for a "period of time agreed upon by the parties after any expert report on non-infringement is served in this case." The obvious purpose of this provision was to give Bedrock an opportunity to review Defendants' source code if new issues were raised in Defendants' expert reports on non-infringement. What Bedrock failed to recognize is that it already has that opportunity under Defendants' and Bedrock's proposed Docket Control Orders. Under both proposals, Bedrock will have nearly one month to review Defendants' source code *after* Defendants' expert reports on non-infringement are served.[1]

Now Bedrock ignores the intended purpose of its own provision and seeks access to Defendants' source code for an undefined "period of time" after the close of discovery. In other words, Bedrock requests *no* discovery cutoff date for source code. This request is unjustified and unnecessary. Bedrock will have months to intensely review, study, analyze and take into its counsel's possession any relevant portions of Defendants' source code before discovery closes on January 10, 2011. If Bedrock has a legitimate need for additional access to source code after the close of discovery, it can raise the issue at that time. However, preemptively seeking an

---

[1] *See* Docket No. 106. Under Bedrock's and Defendants' proposed Docket Control Orders, Defendants' non-infringement reports are due on December 13, 2010 and the discovery deadline is January 10, 2011.

exception to customary discovery procedures without an articulated justification of good cause is inappropriate. Bedrock's request for unlimited source code discovery should be denied.

II.     **Defendants' Position Regarding The Production Of Source Code Printed During Inspections**

Courts recognize the highly sensitive nature of source code and accordingly provide maximum protections. *See, e.g., Adobe Sys. Inc. v. Macromedia, Inc.*, 2001 U.S. Dist. LEXIS 18630 *2-*3 (D. Del. Nov. 5, 2001) (holding source code was "of critical importance to [Defendant's] business and must be provided the highest form of protection a court can provide in the context of a particular case."). *See also Brown Bag Software v. Symantec Corp. et al.*, 960 F.2d 1465 (9th Cir. 1992). Given the irreparable harm that could result from disclosure, Defendants are entitled to know at all times the portions of their source code that have been disclosed to others. In any document inspection, where inspectors tag documents they want copied, the producing party makes the copies, labels the documents, and consequently knows exactly what documents are produced. Defendants simply request that they be allowed to retain a record of that same information for source code.

Bedrock claims that allowing Defendants to know the pages of source code it has printed out during its inspections would reveal work product. This argument fails for several reasons. First, Defendant Google served an interrogatory that requires Bedrock to "specifically identify, on a claim-by-claim basis in a claim chart format, each line of source code in each Accused Instrumentality that Bedrock contends meets each limitation of the claim, and explain in detail how the identified lines of source code satisfy each limitation of the claim."[2] Assuming Bedrock complies with its obligation to answer and supplement its response to this interrogatory, it will be required to disclose each line of source code it believes infringes and how that source code

---

[2] *See* Defendant Google Inc.'s Second Set Of Interrogatories To Bedrock, Request No. 7.

infringes. Disclosure of that information will necessarily reveal the pages of source code Bedrock printed and took into its possession during its inspections. Second, Bedrock is required under Patent Rule 3-1 to specifically identify the allegedly infringing source code in Defendants' accused products. This too requires Bedrock to specifically identify the lines of source code that are relevant to its infringement allegations and thus the pages of source code identified during its inspections. Third, just last month this Court entered a protective order where Bedrock's counsel agreed to allow a producing party to know the pages of source code Bedrock identified and printed during inspection.[3] If Bedrock's counsel were genuinely concerned about revealing work product, it is unclear why they would have agreed to this provision in the *i2 Tech* case. Finally, even if disclosure of Bedrock's work product presented a concern, that concern is far outweighed by the need for Defendants to know what portions of their highly sensitive source code have been revealed to an outside entity.

## CONCLUSION

The parties jointly request that the Court consider their respective positions, make a ruling on such positions, and enter the protective order, accordingly.

---

[3] *See i2 Tech. v. Oracle*, Case No. 6:09-CV-194-LED, Docket No. 76 at ¶10(e) ("Following inspection, the Receiving Party may identify limited relevant portions of the Source Code that the Receiving Party deems reasonably necessary to prepare its case. The Producing Party shall produce within seven (7) calendar days a paper copy of the limited relevant portions of the Source Code identified by the Receiving Party directly to the Receiving Party's outside counsel of record, and the paper copy shall be marked "ATTORNEYS' EYES ONLY – SOURCE CODE." The parties may, at a later date, agree in writing to alternate production arrangements;").

Dated: January 22, 2010

| | |
|---|---|
| Respectfully submitted,<br><br>**McKOOL SMITH, P.C.**<br><br>/s/ *Sam F. Baxter*<br>*(w/ permission by Allen F. Gardner)*<br>Sam F. Baxter, Lead Attorney<br>Texas Bar No. 01938000<br>**McKOOL SMITH, P.C.**<br>sbaxter@mckoolsmith.com<br>104 E. Houston Street, Suite 300<br>P.O. Box 0<br>Marshall, Texas 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099<br><br>Douglas A. Cawley<br>Texas Bar No. 04035500<br>dcawley@mckoolsmith.com<br>Theodore Stevenson, III<br>Texas Bar No. 19196650<br>tstevenson@mckoolsmith.com<br>J. Austin Curry<br>Texas Bar No. 24059636<br>acurry@mckoolsmith.com<br>**McKOOL SMITH, P.C.**<br>300 Crescent Court, Suite 1500<br>Dallas, Texas 75201<br>Telephone: 214-978-4000<br>Facsimile: 214-978-4044<br><br>Robert M. Parker<br>Texas Bar No. 15498000<br>Robert Christopher Bunt<br>Texas Bar No. 00787165<br>**PARKER, BUNT & AINSWORTH, P.C.**<br>100 E. Ferguson, Suite 1114<br>Tyler, Texas 75702<br>Telephone: 903-531-3535<br>Facsimile: 903-533-9687 | **ALSTON & BIRD LLP**<br><br>/s/ *Alan L. Whitehurst*<br>*(with permission by Allen F. Gardner)*<br>Frank G. Smith<br>frank.smith@alston.com<br>ALSTON & BIRD LLP<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, GA 30309<br>Telephone: (404) 881-7240<br>Facsimile: (404) 256-8184<br><br>Alan L. Whitehurst<br>alan.whitehurst@alston.com<br>Marissa R. Ducca<br>marissa.ducca@alston.com<br>ALSTON & BIRD LLP<br>The Atlantic Building<br>950 F Street, N.W.<br>Washington, DC 20004<br>Telephone: (202) 756-3300<br>Facsimile: (202) 756-3333<br><br>*Attorneys for Defendants MySpace Inc.,*<br>*AOL LLC, and*<br>*CME Group Inc.*<br><br>**SONNENSCHEIN NATH & ROSENTHAL LLP**<br><br>/s/ *Yar R. Chaikovsky*<br>*(with permission by Allen F. Gardner)*<br>Yar R. Chaikovsky<br>California State Bar No. 175421<br>SONNENSCHEIN NATH & ROSENTHAL LLP<br>1530 Page Mill Road, Suite 200<br>Palo Alto, CA 94304<br>Telephone: (650) 798-0300 |

| | |
|---|---|
| E-mail: rmparker@pbatyler.com<br>E-mail: rcbunt@pbatyler.com<br>**ATTORNEYS FOR PLAINTIFF BEDROCK COMPUTER TECHNOLOGIES LLC** | Facsimile: (650) 798-0310<br>ychaikovsky@sonnenschein.com<br><br>*Attorney for Defendant Yahoo! Inc.*<br><br>**KILPATRICK STOCKTON LLP**<br><br>*/s/ E. Danielle T. Williams*<br><u>*(with permission by Allen F. Gardner)*</u><br>Steven Gardner (NC Bar #20984)<br>E. Danielle T. Williams (NC Bar #23283)<br>KILPATRICK STOCKTON LLP<br>1001 West 4th Street<br>Winston-Salem, NC 27104<br>Telephone: (336) 607-7300<br>Fax: (336) 607-7500<br><br>*Attorneys for Defendants Softlayer Technologies, Inc. and Amazon.com, Inc.*<br><br>**POTTER MINTON, P.C.**<br><br><u>*/s/ Allen F. Gardner*</u><br>Michael E. Jones<br>State Bar No. 10929400<br>Allen Gardner<br>State Bar No. 24043679<br>POTTER MINTON<br>A PROFESSIONAL CORPORATION<br>110 N. College, 500 Plaza Tower<br>P.O. Box 359<br>Tyler, Texas 75710<br>Tel: (903) 597-8311<br>Fax: (903) 593-0846<br>mikejones@potterminton.com<br>allengardner@potterminton.com<br><br>*Attorneys for Defendant PayPal, Inc., Google Inc., and Match.com, LLC.*<br><br>**QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**<br><br>Claude M. Stern<br>QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP<br>555 Twin Dolphin Dr., Suite 560<br><sub>01987.51573/3092108.4</sub> 11 |

| | |
|---|---|
| | Redwood Shores, CA 94065<br>Telephone: 650-801-5000<br>Facsimile: 650-801-5100<br>Email: claudestern@quinnemanuel.com<br><br>*Attorneys for Defendants Match.com, LLC and Google Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record, who are deemed to have consented to electronic service are being served this January 22, 2010, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by First Class U.S. Mail on this same date.

*/s/ Allen F. Gardner*